**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/18/2025

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
DEPUTY CLERK

| | |
|---|---|
| **US GHOST ADVENTURES, LLC,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **LANCE ZAAL, individually,** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **TOURS & CRAWLS, LLC,** | ) |
| | ) |
| **TOURS & CRAWLS, LLC d/b/a** | ) |
| **ANNAPOLIS GHOST ADVENTURES,** | ) |
| | ) |
| **TOURS & CRAWLS, LLC d/b/a** | ) |
| **ANNAPOLIS GHOST TOURS,** | ) |
| | ) |
| **TOURS & CRAWLS, LLC d/b/a** | ) |
| **ANNAPOLIS GHOSTS,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **MIKE CARTER, individually,** | ) |
| | ) |
|     **Defendants.** | ) |

**Case No.:** 6:25cv00048

**TRIAL BY JURY DEMANDED**

<u>**COMPLAINT**</u>

Plaintiffs US Ghost Adventures, LLC ("USGA") and its owner, Lance Zaal ("Zaal") (collectively, "Plaintiffs"), by counsel, state as their Complaint against Defendants Tours & Crawls, LLC, Tours & Crawls, LLC d/b/a Annapolis Ghost Adventures, Tours & Crawls, LLC d/b/a Annapolis Ghost Tours, and Tours & Crawls, LLC d/b/a Annapolis Ghosts (collectively, "Tours & Crawls"), and their owner, Mike Carter ("Carter"), in his individual capacity (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1.      This is an action for service mark infringement under 15 U.S.C. § 1114; cybersquatting under 15 U.S.C. § 1125(d); trademark and service mark infringement under Virginia and Maryland common law; false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); false advertising under Virginia Code §§ 18.2-216 and 59.1-68.3; and defamation, false light, and tortious interference under common law.

## THE PARTIES

2.      USGA is a Virginia limited liability company with its principal place of business in Gettysburg, Pennsylvania. USGA operates tours and attractions in over 100 cities throughout the United States, including thirteen cities across Virginia and nine cities across Maryland.

3.      Lance Zaal is the owner and registered agent of USGA. He is a resident of New Orleans, Louisiana, with a registered agent office in Virginia.

4.      Tours & Crawls is a Maryland limited liability company with its principal place of business in Annapolis, Maryland. Carter, through Tours & Crawls and its various d/b/as, owns and operates ghost tours in and around Annapolis, Maryland.

5.      Carter is the owner and registered agent of Tours & Crawls. Upon information and belief, Carter is a resident of Annapolis, Maryland. Carter also created and registered the infringing domain name and website usaghostadventures.com.

## JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1116, 1121, and 1125, and diversity jurisdiction under 28 U.S.C. § 1332. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, those claims being joined with a substantial and related claim under the

trademark laws of the United States and closely related to the federal claims such that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.     This Court has personal jurisdiction over Defendants because Defendants operate a business that is infringing upon USGA's trademark/service mark rights in Virginia and interfering with Plaintiffs' ability to conduct business in Virginia. Defendants have purposefully directed their business activities toward Virginia, including by advertising, promoting, and marketing their ghost tours (as well as other competitor ghost tours) to Virginia residents—including by and through their infringing and wrongful activities directed to this forum—and by soliciting customers and businesses in Virginia, including in this forum. In addition, Defendants have caused harm to Plaintiffs in Virginia. Through such conduct, Defendants have purposefully availed themselves of the privileges of conducting business in Virginia, and, when engaging in such conduct, it was reasonably foreseeable that Defendants would be subjected to this Court's jurisdiction.

8.     Venue in this Court is proper under 28 U.S.C. § 1391(b)–(c) in that Defendants are subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

### *USGA's Trademark/Service mark Rights*

9.     USGA is a well-known and successful provider of ghost tours across the United States for nearly a decade. USGA offers a wide spectrum of hospitality and touring services

centered around history in locales throughout the United States, along with related goods,[1] such clothing, souvenirs, and merchandise.

10.     USGA's tours and other commercial attractions—such as museums, bed and breakfasts, etc.—are listed on its website, under the registered domain name usghostadventures.com. USGA owns and operates these tours based on USGA's independent research, collection, interpretation, and exhibition of the history and legends relating to the ghost tour locales (the "Services").

11.     USGA operates tours across the Commonwealth of Virginia, including in and around the following locations: Alexandria, Blacksburg, Charlottesville, Fredericksburg, Hampton, Lynchburg, Norfolk, Richmond, Roanoke, Staunton, Virginia Beach, Williamsburg, and Yorktown.

12.     USGA also operates tours in various locations throughout Maryland, including in and around: Annapolis, Baltimore, Berlin, Denton, Frederick, Havre de Grace, Saint Michaels, Salisbury, and Snow Hill.

13.     Through USGA and/or its predecessors in interest, its ghost tours and Services have been consistently and extensively advertised, promoted, offered, and used in connection with the US Ghost Adventures trademark and service mark (collectively, the "Mark") since 2019.

14.     USGA owns U.S. Service Mark Registration No. 6046260 for the word mark US GHOST ADVENTURES (the "Service Mark") which covers a variety of services, including conducting guided tours of historical sites. The Service Mark was issued on the Principal Register by the United States Patent and Trademark Office on May 5, 2020. A copy of the Certificate of

---

[1] *See, e.g.*, *Shop*, US GHOST ADVENTURES, https://usghostadventures.com/store/ (last visited June 13, 2025).

Registration is attached hereto as **Exhibit 1**. USGA's federal service mark registration gives USGA the exclusive right to use its Service Mark throughout the United States, including in Virginia and Maryland.

15.     In addition to its registered Service Mark rights, and as a result of USGA's substantially exclusive and continuous use and promotion of its ghost tours and related goods under the Mark, USGA has acquired protectable common law trademark and service mark rights in and to goods and services under the Mark.

16.     Through such continuous and exclusive use, the purchasing public has come to associate the Mark with a single source of touring services relating to ghost tours and other paranormal phenomena, along with related goods, such as clothing, souvenirs, and merchandise. Accordingly, the Mark has accrued significant value and goodwill.

### *Defendants' Infringement via "USA Ghost Adventures"*

17.     Since at least January 2024, Defendants have engaged in a targeted campaign to vilify, competitively harm, and interfere with USGA, its business, owner, employees, products, and services.

18.     In furtherance of these goals, Carter, in his individual capacity and on behalf of all Defendants, created and registered, via GoDaddy.com, the confusingly similar and infringing domain name usaghostadventures.com in March 2024 to establish a counterfeit version of USGA's website using the confusingly similar and infringing mark "USA Ghost Adventures."

19.     As noted in connection with a related World Intellectual Property Organization ("WIPO") administrative proceeding, Carter registered and used the infringing domain name "in bad faith," and Carter "who is himself a ghost tour operator and a writer and blogger familiar with the industry, was clearly aware of [USGA] and its mark and likely selected the disputed domain

name [usaghostadventures.com] in emulation of that mark." A copy of the September 2, 2024 WIPO Administrative Panel Decision is attached hereto as **Exhibit 2**.

20.    Defendants' infringing website, using the mark "USA GHOST ADVENTURES," instructed visitors on its main page to: "**SHOP LOCAL!** Don't be tricked by the ***large national chains*** who pretend to offer the local tour experience you're seeking. Our guests all deserve a locally-owned and operated tour, lead by local guides, with local knowledge like only we can all offer!" Copies of webpages from Defendants' infringing USA Ghost Adventures website are attached hereto as **Exhibit 3** (emphasis in original).

21.    In an effort to wrongfully divert business away from USGA, Defendants' infringing website also contained a "Find a Tour" and "Locations" pages with links to over sixty websites of USGA's competitor ghost tour operators throughout the United States. The "Find a Tour" page displayed the heading "EXPLORE SOME OF [THE] BEST US GHOST ADVENTURES LIKE A LOCAL," followed by a listing of more than 84 cities throughout the United States where USGA operated. *Id.*

22.    By comparing Defendants' and USGA's websites at the time, it is clear that Carter and Defendants used all USGA's ghost tour locations Carter was aware of to populate the listings with businesses that compete with USGA to wrongfully divert customers and business away from USGA (and direct those customers to Defendants and other competing tours) using the website and infringing mark "USA Ghost Adventures." Below are representative examples of Defendants' efforts to mirror and target all USGA locations Carter was aware of to unlawfully divert business away from USGA (and direct those customers to Defendants and other competing tours):



Ex. 3. Copies of webpages from USGA's website as of April 25, 2024 are attached hereto as **Exhibit 4**.

23.    Notably, numerous cities listed on the "Find a Tour" page were not yet populated with links to tours that competed with USGA because Defendants could not identify any USGA competitor in those locations. Defendants nonetheless included all USGA locations Carter was aware of, even if he could not identify a competitor in the location, and this fact shows Defendants'

bad faith plan to use their infringing domain and infringing "USA Ghost Adventures" website to target and harm all USGA tours and locations they were aware of:

**FLAGSTAFF, AZ**

**FORT LAUDERDALE, FL**

**FORT PIERCE, FL**

**FORT WORTH, TX**

**GALVESTON, TX**

*Spooky Galveston Ghost Tours*

Ex. 3.

24.     Through their infringing domain name and website, Defendants intentionally sought to harm USGA's business across the nation, including locations in this forum and throughout Virginia. Below are examples of Defendants' infringing activity directed to Virginia and this forum, using live and active hyperlinks to competing tours in in Alexandria, Lynchburg, Richmond and Williamsburg, Virginia:

6/10/24, 5:59 PM                                       FIND A TOUR

KEEPING THE TRADITION OF SHARING LOCAL HISTORY AND LORE THROUGH GHOST STORIES ALIVE!

 

**USA GHOST ADVENTURES**

# EXPLORE SOME OF BEST US GHOST ADVENTURES LIKE A LOCAL:

…

## ALEXANDRIA, VA

*Alexandria Colonial Tours*

…

LYNCHBURG, VA

*Lynchburg Ghost Tours*

…

6/10/24, 5:59 PM                                        FIND A TOUR

RICHMOND, VA

*Haunts of Richmond*

…

WILLIAMSBURG, VA

*The Original Ghost Tour of Williamsburg*

*Id.*

25.     Moreover, the "Contact" page on Defendants' infringing website included a form for other "locally owned & operated tour[] companies," who compete with USGA, to request inclusion in Defendants' listing. *Id.* It also stated: "Don't let guests be fooled by national chains pretending to be you!" *Id.*

26.     Through their counterfeit website, Defendants passed "USA Ghost Adventures" off as USGA for the purpose of diverting business and services away from USGA to Defendants and other competitor ghost tour companies and otherwise caused USGA competitive harm in Virginia, Maryland, and elsewhere.

27.     Defendants knowingly, intentionally, and in bad faith used a similar mark to USGA's Mark in a manner that was likely to cause confusion, mistake, or to deceive.

28.     Defendants' bad faith conduct following the commencement of the WIPO proceedings on July 22, 2024, further demonstrates their intent to deceive and create confusion with USGA's Service Mark.

29.     Carter was formally notified of USGA's WIPO complaint on July 22, 2024, and he filed his response in the WIPO proceeding on August 13, 2024. Ex. 2, at 1.

9

30.     Approximately two weeks later (and shortly before the WIPO issued its decision finding that Carter registered "usaghostadventures.com" in bad faith), Carter and Defendants applied to register the trade name "Annapolis Ghost Adventures" in Maryland, using the predominate "Ghost Adventures" component of USGA's Service Mark in connection with Defendants' ghost tour operations to further emulate USGA's Service Mark. A copy of the August 29, 2024 Trade Name Application is attached hereto as **Exhibit 5**.

31.     At the time, Defendants had full knowledge that USGA was challenging their infringing use of "USA Ghost Adventures" in the domain name "usaghostadventures.com" on the grounds that it was confusingly similar to USGA's Service Mark and domain name "usghostadventures.com." Defendants nonetheless registered the "Annapolis Ghost Adventures" trade name in bad faith and during the pendency of the WIPO proceeding.

32.     Days later, on September 2, 2024, the WIPO Administrative Panel found that Carter's conduct "fit[ ] the paradigm of misleading Internet users for commercial gain using a domain name that is confusingly similar to a trademark." Ex. 2, at 4.

33.     Despite this clear ruling, Defendants continue to maintain their active and bad faith registration of the trade name "Annapolis Ghost Adventures" that wrongfully seeks to trade off of the predominate elements of the "US Ghost Adventures" Service Mark.

34.     In addition, around or shortly following the WIPO ruling, Defendants added a "Local Ghost Adventures" page to Defendants' website, using the predominate "Ghost Adventures" component of USGA's Service Mark, in bad faith, to target internet searches for "US Ghost Adventures" Service Mark and redirect customers to competing tours.

35.     On information and belief, Defendants also registered, via GoDaddy.com, "localghostadventures.com" on October 23, 2024, shortly after the WIPO ruling. A copy of the domain registration information on Whois is attached hereto as **Exhibit 6**.

36.     In other words, despite the WIPO finding that Carter "who is himself a ghost tour operator and a writer and blogger familiar with the industry, was clearly aware of [USGA] and its mark and likely selected the disputed domain name [usaghostadventures.com] in emulation of that mark," Defendants nonetheless promptly registered "localghostadventures.com" and moved their competing tour content from the "USA Ghost Adventures" website to a new "Local Ghost Adventures" webpage, with the predominate "Ghost Adventures" component of USGA's Service Mark to continue their unlawful campaign to divert business and customers away from USGA, shortly after the WIPO ruling against them. Ex. 2, at 4.

37.     As before, Defendants used the new webpage to target customers and prospective customers in Virginia and this forum, using their new "Local Ghost Adventures" page, which is substantively similar to the "Find a Tour" page on the infringing USA Ghost Adventures website:



38.     As before, numerous cities listed on the "Ghost Tours Near Me" page are not populated with links to tours that competed with USGA because Defendants still could not identify any USGA competitor in those locations. Defendants nonetheless included those locations, which continue to evidence Defendants' bad faith plan to use "Ghost Adventures" to pull Google searches for USGA's Service Mark "US Ghost Adventures" to target and harm all USGA tours and locations they were aware of:

| USGA Website | Defendants' "Local Ghost Adventures" Webpage |
|---|---|
| **CHEYENNE, WY**<br>Cheyenne Ghosts<br>**CHICAGO, IL**<br>Windy City Ghosts<br>**CINCINNATI, OH**<br>Cincinnati Ghosts<br>**CLEVELAND, OH**<br>Cleveland Ghosts | CHEYENNE, WY<br>CHICAGO, IL<br>CINCINNATI, OH<br>CLEVELAND, OH |

| | |
|---|---|
| **ST. LOUIS, MO**<br>St. Louis Ghosts<br>**STUART, FL**<br>Stuart Ghosts<br><br>**TAMPA, FL**<br>Tampa Terrors<br>**TOMBSTONE, AZ**<br>Tombstone Terrors<br>**VIRGINIA BEACH, VA**<br>Neptune Ghosts | **ST. LOUIS, MO**<br><br>**STUART, FL**<br><br>**TAMPA, FL**<br>Tampa Bay Haunted Tours<br>The Official Ybor City Ghost Tour<br><br>**TOMBSTONE, AZ**<br><br>**VIRGINIA BEACH, VA** |

*Defendants' False Advertising*
**(*Including Defamatory and Disparaging Comments & Marketing*)**

39.    Since 2024, Defendants have made and continue to make countless false, defamatory, and deceptive claims and statements about Plaintiffs and false or misleading descriptions of fact in commercial marketing that misrepresents the nature, characteristics and quality of USGA's goods, services and commercial activities in online forums, online marketing channels, social media platforms, and direct communications with customers, prospective customers, business partners, and prospective business partners.

40.    For example, through their infringing USA Ghost Adventures website, and Tours & Crawls website, Defendants have published (and republished) a series of blog posts containing false, disparaging, and misleading statements about Zaal, USGA and its goods, services and commercial activities.

41.    Defendants' April 3, 2024 blog post on the infringing USA Ghost Adventures website, for example, referred to national ghost tour companies, and specifically USGA, as "predatory," "shady," "corporate raiders," "unscrupulous," and "out of town charlatans," and other false and misleading descriptions of fact in commercial marketing that misrepresents the nature, characteristics and quality of USGA's goods, services and commercial activities. A copy of this

blog post, titled "Under Attack! Why Local Ghost Tours? Are They in Jeopardy?", is attached

hereto as **Exhibit 7**. Defendants specifically referenced USGA's competing ghost tour operation

in Annapolis and falsely stated that:

> [T]hese ***ethically ambiguous* opportunists** have set their sights on locally owned and operated Ghost Tours and Pub Crawls. **Their goals, to put the locals out of business, and claim their market share.** They send in advance teams who methodically, **deceptively,** and stealthily move into new geographic areas; . . . **[they]** *sneak onto those established company's tours* **with the** *sole objective to steal their intellectual property in the form of ghost tour content and stories*. **Which they then change around slightly, and claim as local, unique, and authentic.** They are none of these!
>
> . . .
>
> Unlike these **unscrupulous companies**, local ghost tour companies offer a personal, authentic experience that large national and franchise tour companies cannot. Local companies and guides quite simply know their destination far better than these out of town charlatans. And, local companies offer more intimate groups, allowing guests a more personal experience, and guides to cater their tours to what interests the participants most. The guide can linger at haunted sites, telling legends and personal accounts of supernatural encounters. With fewer people, and knowledgeable guides, there's more opportunity to ask questions and interact. Local guides know the history, stories, and landscape of their respective locations best!

*Id.* (emphasis added). Defendants simultaneously posted this article on The Ghost Writer,[2] a blog

hosted and published by Defendant Tours & Crawls.

      42.    Next, Defendants made false and defamatory statements about Plaintiffs and

USGA's goods, services and commercial activities in Defendants April 12, 2024 blog post on The

Ghost Writer. A copy of this blog post, titled "Local Business Under Attack by National Chain US

---

[2] In April 2024, Tours & Crawls's website used the domain name toursandcrawls.com, and its blog was named "The Ghost Writer." Upon information and belief, in October 2024, its domain name was changed to annapolisghosts.com and its blog was renamed to "The Ghost Writer Blog." Plaintiffs will refer to both versions of Tours & Crawls's blog as "The Ghost Writer" for ease of reference.

Ghost Adventures", is attached hereto as **Exhibit 8**. Defendants referred to USGA as "[t]he most egregious" of the "big national chains," and falsely stated that:

> They **bully small local tour operators**, most with less than five employees, who are supporting themselves and their families with the revenue their small business generates. **Companies like *US Ghost Adventures don't play fair, violate the law, and are actively involved in fraud and deceptive business practices*. They capitalize on the hard earned reputations of small local companies, *steal their hard work and research, intellectual property, and violate their trademarks*, hoping they'll sue and be forced to spend large amounts of money until they give up on costly litigation, or shutter their businesses.**

*Id.* (emphasis added). Defendants incorporated a news article regarding USGA's ongoing litigation over its Lizzie Borden trademark, adding disparaging commentary and characterizing USGA as an "industry pariah." *Id.* This article was republished on the infringing USA Ghost Adventures website on April 16, 2024, and by Defendant Tours & Crawls on January 2, 2025.

43.    Likewise, in an April 21, 2024 blog post on USA Ghost Adventures, Defendants wrote that "[s]ince their inception, US Ghost Adventures (USGA), and its apparently ethically-challenged owner Lance Zaal, have allegedly made it a standard business practice to violate and infringe small, locally-owned Ghost Tour companies' trademarks." A copy of this blog post, titled "Local Ghost Tours fighting back against Natl. US Ghost Adventures", is attached hereto as **Exhibit 9**.

44.    In this article, Defendants doubled down on their deceptive, false, and inflammatory statements and marketing:

> **[T]hey are accused of deceptive business practices beyond just the trademark infringements, such as claiming local company's pre-existing Google Business pages as their own**, and in the case of at least one company, 20 years of customer reviews son [*sic*] comments. Additionally, **there is direct recorded proof of the company willfully redirecting USGA's negative customer reviews to the Google reviews pages of their competitors, while directing all positive reviews to their own Google reviews page**.

> Purportedly, **Lance Zaal has stated that it is his goal to either drive the local company out of business, or force them to hire costly Patent & Trademark attorneys to bring expensive litigation against USGA. And, then settling the matter by grudgingly removing any offending violation before the matter can adjudicated and a ruling against USGA. But, not before forcing the small local businesses to dole out upwards of $10K to force the matter into court.** Money which is hard to come by for a small company with limited revenue and resources to fight a corporate behemoth like USGA.

*Id.* (emphasis added). These statements are patently untrue and defamatory as to Plaintiffs, and further misrepresent the nature and characteristics of USGA's services and commercial activities. Defendants cannot falsely attribute such egregious statements to Zaal simply by adding the word "purportedly." Moreover, Defendants have not shown (and cannot show) any such "proof" to support Defendants' speculative, false, and misleading assertions. Despite these gross deficiencies, Defendants republished this blog post on The Ghost Writer on April 25, 2024 and again on January 2, 2025.

45.    In January 2025, Defendants fired off several blog posts on The Ghost Writer that contained additional false and misleading statements about Plaintiffs. On January 2, 2025, Defendants posted a photo of Zaal, adding the caption "Lance Zaal, owner of US Ghost Adventures, under legal and civil scrutiny for his *questionable, deceptive, fraudulent, if not illegal business practices*." (Emphasis added). A copy of this blog post, titled "Ghost tours nationwide are infuriated by US Ghost Adventures!", is attached hereto as **Exhibit 10**.

46.    In a second blog post published that same day, Defendants falsely asserted that Annapolis visitors were "finding themselves accidentally booking with a National company called US Ghost Adventures (USGA), **who are intentionally trying to deceive them**!" A copy of this blog post, titled "US Ghost Adventures games Google to deceive guests in Annapolis!", is attached hereto as **Exhibit 11** (emphasis added). Defendants attached several photos to the article in support

of his deceptive claim that "USGA, at the likely behest of its apparently morally-challenged owner, Lance Zaal, has changed the name of their Google Business Listing 3x in the past month to mimic Annapolis Ghost Tours & Crawls." *Id.* Defendants' disparaging statements are intended to defame Plaintiffs and confuse and mislead customers about USGA's services.

47.     On February 5, 2025, Defendants posted additional baseless and disparaging remarks about Plaintiffs on The Ghost Writer and Tours & Crawls's social media:

> National chain, US Ghost Adventures, and its apparently **ethically challenged owner** Lance Zaal, sent out an email offering monetary compensation to other companies with whom we have strong business ties and personal relationships, were they to agree to replace any links they have to Annapolis Ghost Tours on their websites, with links to the Annapolis page on USGA's website. **Apparently, if he can't beat us fairly, he just tries to cheat. Seems like an act of desperation by a supposedly successful business man whose market share is slipping away**."

A copy of this blog post, titled "US Ghost Adventures offering money for other companies to swap links away from our website for links to theirs!", is attached hereto as **Exhibit 12** (emphasis added).

48.     In addition to their bad faith conduct outlined above, Defendants have attempted to wrongfully misappropriate purely descriptive and geographically descriptive terms from the marketplace to improperly monopolize Google search results for purely descriptive terms. For example, Defendants have claimed that their use of "Annapolis," the specific geographic location of their tours, and the purely descriptive phrases "ghost tour" or "ghost tour and pub crawl" cannot be used by others to describe ghost tours and/or pub crawls in Annapolis, Maryland—even though these are the *exact* descriptive terms a visitor to Annapolis would search in Google when generically searching for "ghost tours" and/or "pub crawls" in Annapolis, Maryland—without any knowledge of or intent to search for any specific source of tours or pub crawls.

49. Defendants, however, cannot wrongfully appropriate these generic and purely descriptive terms from the marketplace and monopolize Google searches for these generic terms.

50. Unlike Defendants' attempt to appropriate generic and purely descriptive terms and specific geographic locations—such as Annapolis—USGA's Service Mark does not identify *any* tour location in the United States, and "Adventures" is a term that does not describe *any* event offered. Further, "US Ghost Adventures" is a well-established Mark that has secondary meaning.

### Defendants' False and Misleading Smear Campaign and Conspiracy with Others via Social Media and Other Platforms

51. In addition to their own prolific writings, Defendants have been featured in news articles and blog posts associated with other local ghost tour companies, as part of a collective smear campaign by other ghost tour companies, including those in Baltimore, Maryland; Havre de Grace, Maryland; Orlando, Florida; Austin, Texas; and Washington, D.C. that have conspired to damage Plaintiffs' business, reputations, and standing in the hospitality and tourism industries, as well as confuse and mislead customers and business partners to divert goods and/or services away from USGA and to their own companies.

52. For example, the Baltimore Banner interviewed Carter for an article about USGA that was published on October 23, 2024. A copy of this article, titled "Big Ghost is coming for Mom and Pop Ghost—and winning tour tickets," is attached hereto as **Exhibit 13**. Carter claimed that in early 2024, he "noticed US Ghost Adventures' presence in Annapolis and entered a standoff with the national brand." *Id.* He falsely insinuates that USGA "sn[uc]k in in the dead of night" and stole the name previously used by his company, Annapolis Ghost Tours, as well as the names of other "past competitors." *Id.*

53. In a November 29, 2024 blog post, Austin Ghost Tours republished Defendants blog post, "Local Ghost Tours Fighting Back Against Natl. US Ghost Adventures," and attributed the following additional misleading and defamatory statements to Tours & Crawls:

> [A]ccording to the Annapolis tour, **the game is to pretend to be the local business because the local business is real, has real reviews and top SEO because of this. Lance Zaal gets paid through TripAdvisor with no accountability or refunds or questions asked** when the customer is obviously disappointed. **Hiring people to constantly write fake 5-star reviews to counter the real reviews alerting others to the scam**.

A copy of this blog post, titled "Holiday Ghost Tour Scams on TripAdvisor", is attached hereto as **Exhibit 14** (emphasis added).

54. Moreover, Defendants and their co-conspirators have engaged and continue to engage in egregious and coordinated efforts to malign Plaintiffs on social media and other online forums.

55. For example, Havre de Haunts Ghost Tours ("Havre de Haunts"), a competitor ghost tour operator in Havre de Grace, Maryland, shared the Baltimore Banner article about USGA in a Facebook post on October 23, 2024. A copy of this Facebook post is attached hereto as **Exhibit 15**. Baltimore Ghost Tours commented, thanking Havre de Haunts for sharing the article. Lisa Unruh Lopez, owner and operator of Havre de Haunts, replied: "[N]o problem! Wish we could do more to shut them down." *Id.*

56. Upon information and belief, Defendants and other competitor ghost tour businesses and/or proprietors have joined and actively participate in a private Facebook group, as well as a public Facebook page, in furtherance of their shared intent to cause competitive, reputational, and other harm to Plaintiffs.

57. The private Facebook group, titled "**Professional Ghost Tour Guides**," describes itself as "a members-only group for GHOST TOUR OWNERS OR WORKING GHOST TOUR

GUIDES . . . that is geared towards SMALL business owners and not chain ghost tour companies." A copy of the "About" page of the Professional Ghost Tour Guides Facebook group is attached hereto as **Exhibit 16**. Rappa, a known co-conspirator with Defendants, is one of the administrators of this private group.

58.     Similarly, the public Facebook page, titled "**US Independent Ghost Tours**," posts and disseminates articles, blog posts, and allegations containing false, misleading, and disparaging information about Plaintiffs, including many of the published statements discussed above.

59.     For example, on March 29, 2025, the "US Independent Ghost Tours" group wrote: "Lance [Zaal], the guy who has turned legitimate ghost tours and historic sites into circus side shows!" In response, Baltimore Ghost Tours wrote:

> **Baltimore Ghost Tours** ✔
> You posted this on a public page! This page is for customers! You want the **Professional Ghost Tour Guides** page 😊

60.     Previously, on March 5, 2024, US Independent Ghost Tours posted an article on Facebook about Ghost City Tours, a competitor ghost tour operator, along with the caption "Who the hell is this? They have about 250k followers?? They're spamming my [Instagram] and [Facebook]." A copy of this Facebook post is attached hereto as **Exhibit 17**.

61.     Again, US Independent Ghost Tours commented "I think you meant to post this on the [private] Professional Ghost Tour [G]uides Facebook page. Please remember: the US Independent Ghost Tours page is a customer and public facing page for independent ghost tours to promote their tours!" *Id.*

62.     These directions by US Independent Ghost Tours to direct those disparaging Plaintiffs to comment, discuss and coordinate on their private **Professional Ghost Tour Guides** group plainly demonstrates that the purpose of the private Facebook group is to air grievances and

coordinate actions against USGA and other ghost tour operators that they characterize as "chain ghost tour companies."

63.    On information and belief, the **Professional Ghost Tour Guides** private Facebook group messages and communications between members will contain additional details of Defendants and their co-conspirators plan and coordinated efforts to damage Plaintiffs' business, reputations, and standing in the hospitality and tourism industries, as well as confuse and mislead customers and business partners to divert goods and/or services away from USGA and to their own companies.

64.    Tours & Crawls and its agents, including Carter, have also posted false, misleading and disparaging comments in response to a YouTube video about Plaintiffs, published by Simply Strange (@Simply_Strange) on April 3, 2025. Copies of the comments to this YouTube video, titled "US Ghost Adventures Is Trying To BULLY Out Other Companies!", are attached hereto as **Exhibit 18**.[3] As highlighted below, Defendants actively engage with fellow competitor ghost tour operators and potential customers to encourage harmful and misleading attacks and direct competitors, customers and potential customers to their blog posts, which contain further misleading and disparaging statements about Plaintiffs. The following are representative examples of this conduct:

        (a)    Comments by Tours & Crawls (@AnnapolisGhostTours) and its agents, including Carter and employees Melissa Huston (@versionsofmel) and Melissa Rowell (@melissarowell2893), who is also the owner of Baltimore Ghost Tours:

                (i)    "Melissa from Annapolis Ghosts – THANK YOU for bringing this info to light. It's just the TIP of the story." @versionsofmel

                (ii)   "It's come to my attention that this is no longer exclusive to the US based companies. USGA is doing the same thing abroad. Companies

---

[3] The non-duplicative sets of screenshots contained in Exhibit 18, taken together, show all of the comments to the YouTube video as of May 27, 2025.

in the UK have reached out to me after seeing this video and jumping onto our social media and our blog, where they ***see the level of fraud taking place***. I guess it makes them feel safe contacting me as a potential ally." @AnnapolisGhostTours (emphasis added)

(b)    Annapolis Ghost Tours & Crawls's responses to comments arguing that USGA's actions, as alleged in the video, are legal and constitute fair competition, and that Annapolis Ghost Tours doesn't like competition:

    (i)    "That['s] NOT the situation[.]" @versionsofmel

    (ii)   "We have reams of evidence that this ***goes way beyond 'ethical' and is deep into the realm of illegal business practices***." @AnnapolisGhostTours (emphasis added)

    (iii)  "We have reams of evidence, beyond this email, that this goes way beyond 'ethical' and is deep into the realm of illegal business practices. **I'd suggest visiting our website and reading through our blog posts**, with supporting evidence on this topic." @AnnapolisGhostTours

    (iv)   "They are offering money to remove competition, specifically me in this case, from articles and websites of relevant outlets." @mikeannapolismojo

    (v)    "There is more to the story." @versionsofmel.

(c)    Comments between Tours & Crawls and Emily Carvey (@Emicarvey), an employee at a competitor ghost tour company, AbqTours, in Albuquerque, New Mexico

    (i)    "There was also an article in Boston about 9 months ago talking about 2 local groups having problems with USGA. **They steal material from local groups. They change the name of their tours to be close to the name of a popular local group to trick people into sign up for the USGA tour when they think they are signing up for the local group**. This was all in that article and it's all the same things I've experienced with that company all that way across the country. The local groups don't have a problem with competition, have been competing for years to decades. The local groups only have an issue with USGA because of their shitty way of running business[.]" @Emicarvey

        (1)    @AnnapolisGhostTours replied to this comment, stating: "You are exactly right! We welcome local competition. We reach out and form relationships with other companies. **We don't steal materials**, nor trash talk legitimate companies doing the right thing."

       (2)      @Emicarvey replied further, stating: "same. I give ghost tours in Albuquerque NM and we had a local competitor (didn't survive covid unfortunately) that we never had a problem with. **We have a problem with them stealing our material, changing their local name to be near identical to ours, and tricking guests into thinking they signed up for a tour with us**. Not to mention how they treat their guests. And their guides."

    (ii)    In response to a comment stating that "[i]t[']s dirty but it[']s business," @Emicarvey stated:

       (1)      "**Except they steal material from existing tours. And [Zaal] changes the name of [ ] his local tours so they are very close to the existing tour's name.** People think they are signing up for the local company tour but actually it's the national tour[.]"

       (2)      "@ the company I work for has had nearly the identical experience with them. They are awful[.]"

  (d)    Comments on behalf of Ting Rappa ("Rappa"), who owns and operates a competitor ghost tour company, American Ghost Adventures ("AGA"),[4] in Orlando, Florida

    (i)    "This is true because someone who owns an Orlando paranormal group is being bullied by US Ghost Adventures that [I] talk to daily." @dannyortiz0406

*Id.*

65.     In connection with the YouTube video above, by way of example, Defendants repeatedly encourage potential customers, actual customers, potential business partners, and actual business partners alike to "visit our website and read[] through our blog posts" containing "reams of evidence" that Plaintiffs' alleged conduct "goes way beyond 'ethical' and is deep into the realm of illegal business practices." Accordingly, the false, misleading and disparaging statements made by other ghost tour competitors and/or individuals on behalf of Defendants are a natural and

---

[4] On April 5, 2025, American Ghost Adventures posted a link to this YouTube video on Facebook, adding the caption "Boycott these tours! . . . Not a good company and definitely unethical business practices!" A copy of this Facebook post is attached hereto as **Exhibit 19**.

probable result of Defendants' profuse social media and online publication of false and misleading statements about Plaintiffs. Defendants' pattern and practice of creating and encouraging the dissemination of false, misleading and disparaging statements about Plaintiffs and USGA's services and commercial activities has caused and will continue to cause reputational and competitive harm to Plaintiffs.

66.     Tours & Crawls has even gone so far as to encourage potential customers to suggest inaccurate changes to USGA's Google Business Profile—one of several methods that Defendants routinely employ to interfere with Plaintiffs' business. In response to a comment on its February 5, 2025 Facebook post asking how people could help, Tours & Crawls recommended that they

> go to [USGA's] Google Business page and click the 'Suggest an Edit' button. **Request that Google change the name to 'US Ghost Adventures,' as it is their legal name.** They are currently illegally, in violation of our trademarks, and against Google's terms of service . . . trying to trick guests into thinking they are us.
> . . .
> **We appreciate any help we can get taking on a bullying national company** with deep pockets, and **little regard for business ethics**!

Copies of this Facebook post and comments are attached hereto as **Exhibit 20** (emphasis added).

67.     Tours & Crawls reiterates its recommendation, along with additional false and disparaging statements about USGA, in the "Frequently Asked Questions" page on its website:

> Q: Why are you called the "Original Annapolis Ghost Tours"?
>
> A: . . . Unfortunately, an **unscrupulous national chain** has decided rather than doing the hard work of establishing themselves and building their own reputation of excellence, **they have opted to trade on our well established and legal name in their determined attempts to trick or fool guests such as yourselves into thinking they are Annapolis Ghost Tours**.
>
> **If you find this practice as offensive as we do, we urge you to file a complaint with Google!**

A copy of the "Frequently Asked Questions" webpage from Tours & Crawls's website is attached hereto as **Exhibit 21** (emphasis added). By including these statements on Tours & Crawls's "Frequently Asked Questions" page, which potential customers are likely to visit, Defendants are specifically targeting potential and/or actual USGA customers to confuse and mislead them about USGA's ghost tour operations and services.

68.    In furtherance of their campaign against Plaintiffs, Defendants and their co-conspirators have also engaged in a pattern and practice of "trading" positive reviews and/or posting fake positive reviews of their respective competitor ghost tours—even if they did not actually participate in the ghost tour they reviewed—and leaving negative reviews of USGA's ghost tour operations.

69.    For instance, in or around February 2025, AGA posted a glowing review on Queen City Tours and Travel's ("Queen City Tours") Google Business Profile, encouraging potential customers to choose Queen City Tours over other ghost tour operations in Charlotte, North Carolina:


American Ghost Adventures

⋮

★ ★ ★ ★ ★  4 months ago

If you are in the Queen City area, this is the tour to take! You can tell the passion the owner has about the business and his customer service is 2nd to none. Just book it!

A copy of AGA's review of Queen City Tours is attached hereto as **Exhibit 22**.

70.    Queen City Tours reciprocated the promotion in its response, encouraging potential customers visiting Orlando to "[s]chedule a SCARE with American Ghost Adventures whose Haunts, Haints, and Hants are Above The Best and Better Than the Rest!" *Id.* Upon information

and belief, Queen City Tours is not actively offering ghost tours and was not offering ghost tours at the time AGA posted its review. Accordingly, AGA, through Rappa, sought to mislead and divert potential customers by posting a fake review of Queen City Tours, a direct competitor of USGA's ghost tour operation in Charlotte, North Carolina.

71.    Carter and others have also targeted USGA's Google Business Profile in the same way that Carter encourages members of the public to do so above, including by making comments intending to deceive and divert customers, reporting the page as stolen, and requesting a transfer of the ownership or reviews associated with that page.

72.    Defendants and their co-conspirators have routinely and repeatedly edited USGA's Google Business Profile for its ghost tour operations in numerous cities—including, but not limited to, Annapolis, Baltimore, D.C., and Orlando—adding incorrect or misleading information without Defendants' knowledge or authorization. Upon information and belief, in May 2025, Carter and/or Rappa changed the name and website link on USGA's Google Business Profile for its ghost tour operation in Orlando, Florida from "Orlando Haunts" to "US Ghost Adventures." Their continuing interference and bad-faith tactics force USGA to expend time and effort to monitor and correct its Google Business Profile with respect to each USGA ghost tour operation that Defendants and their co-conspirators improperly alter.

***Defendants' Intentional Interference with Plaintiffs' Marketing Opportunities and Contracts***

73.    To advertise and promote its ghost tour and other services in Annapolis, USGA sought to obtain an online listing with Visit Annapolis & Anne Arundel County ("Visit Annapolis"), "a nonprofit, partnership-focused Destination Marketing/Management Organization (DMO) . . . [whose] mission is to foster a welcoming destination and promote tourism on behalf of our visitors, partners, and community." *Who We Are*, VISIT ANNAPOLIS, https://www.visitannapolis.org/vaaac/who-we-are/ (last visited May 29, 2025).

74.     After an extensive, nearly year-long effort to complete Visit Annapolis's process for getting listed, in October 2024, USGA successfully obtained two listings: one for its ghost tour, and one for its haunted pub crawl.

75.     Subsequently, USGA entered into a twelve-month contract beginning on March 1, 2025 with Destination Travel Network ("DTN"), an online advertising network that works with DMOs such as Visit Annapolis (the "Agreement"). Pursuant to the terms of the Agreement, USGA would receive two "featured" listings on Visit Annapolis for an initial term of twelve months, after which the Agreement would continue on a monthly basis until USGA directed otherwise.

76.     Following the execution of the Agreement, as of April 14, 2025, USGA's featured listings—one for its ghost tour, and one for its haunted pub crawl—were available on Visit Annapolis.

77.     On May 7, 2025, Visit Annapolis abruptly and unilaterally removed USGA's featured listings from its website. USGA followed up on several occasions, seeking additional details and clarification regarding the removal of its listings and Visit Annapolis's decision-making process.

78.     Upon information and belief, Carter made false, misleading and defamatory statements to Rasheeda Martin, Senior Director of External Relations, and/or others at Visit Annapolis, including, but not limited to, statements that USGA engages in illegal, unfair and unethical practices, steals intellectual property, writes fake online reviews, engages in illegal attacks on local businesses, and/or other defamatory statements similar to those Defendants made elsewhere on their blog, infringing website and social media. Carter made such statements with the purpose of interfering with the business relations between USGA and Visit Annapolis, and the contractual relations between USGA and DTN.

79.     As a result of Carter's intentional and unlawful interference, USGA has suffered actual damages resulting from: (i) the breach and/or non-performance of the Agreement; and (ii) the improper removal of its listings from Visit Annapolis.

80.     Defendants' robust history of making similar false and misleading statements in order to deceive, confuse, and mislead potential customers and business partners, and to cause competitive and reputational harm to Plaintiffs, further demonstrates Carter's intent with respect to USGA's listings on Visit Annapolis. Indeed, Defendants have wrongfully interfered and continue to interfere with USGA's business listing on Google, including by encouraging the public to suggest inaccurate changes or file a complaint about its listing to Google.

81.     Further, Carter has knowledge of and familiarity with Visit Annapolis—including the process and requirements to obtain a listing—given that his competitor ghost tour business remains listed on Visit Annapolis. *See Annapolis Ghost Tours & Crawls*, VISIT ANNAPOLIS, https://www.visitannapolis.org/listing/annapolis-ghost-tours-%26-crawls/8155/ (last visited May 29, 2025).

82.     As a result of the foregoing conduct by Defendants, Plaintiffs have suffered and continue to suffer, and seek damages and equitable relief against Defendants for: registered service mark infringement (Count I); cybersquatting (Count II); common law trademark and service mark infringement/ unfair competition under Virginia and Maryland law (Counts III-IV), false advertising under the Lanham Act (Counts V), false advertising under Virginia law (Count VI), defamation (Count VII), false light (Count VIIII), and tortious interference (Count IX).

**CAUSES OF ACTION**

**COUNT I**
**REGISTERED SERVICE MARK INFRINGEMENT**
(Against Defendants)
(15 U.S.C. § 1114)

83.     Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

84.     USGA owns U.S. Service Mark Registration No. 6046260 for the word mark US GHOST ADVENTURES used in connection with its ghost tour services, which was issued on the Principal Register by the United States Patent and Trademark Office on May 5, 2020, and USGA has used and continues to use the Service Mark in connection with its specified services in interstate commerce.

85.     The Service Mark is inherently distinctive and/or has acquired secondary meaning, and the Service Mark has been and will continue to be known throughout the United States as identifying and distinguishing USGA's services, including its ghost tour operations.

86.     Without USGA's authorization or consent, Defendants created and operated a counterfeit version of USGA's website, using the infringing mark "USA Ghost Adventures" (the "Infringing Mark") in a manner likely to cause confusion, mistake or to deceive and infringed on USGA's registered Service Mark to divert business and services away from USGA to competitor ghost tour companies—including Defendants' competitor ghost tour operations in Annapolis, its co-conspirators' ghost tours and others—and to otherwise cause USGA competitive harm.

87.     Defendants' creation and use of the Infringing Mark by and through the counterfeit website was in bad faith and for sole purpose of causing confusion and diverting business and services away from USGA to competitor ghost tour companies—including Defendants' competitor ghost tour operations in Annapolis, its co-conspirators' ghost tours and others—through use of a confusingly similar mark.

88.    Defendants used the Infringing Mark in commerce and in connection with the sale, offering for sale, distribution, or advertising of goods or services, and in a manner that is likely to cause confusion, to cause mistake, or to deceive.

89.    Defendants are and/or have been able to wrongfully profit from USGA's goodwill through the use of the Infringing Mark to divert existing and/or prospective USGA customers and otherwise caused USGA financial and competitive harm.

90.    By using the Infringing Mark for commercial purposes without USGA's authorization or consent, Defendants have deprived USGA of its exclusive right to control, and benefit from, the Service Mark.

91.    Defendants' use of the Infringing Mark constitutes service mark infringement in violation of § 32 of the Lanham Act, 15 U.S.C. §§ 1114.

92.    By reason of and as a direct and proximate result of Defendants' service mark infringement, Defendants have caused damage to USGA's business, reputation, and goodwill, and/or have diverted business and sales from USGA to competitor ghost tour companies, including Defendants' and/or Defendants' co-conspirators' tours.

93.    USGA is entitled to recover Defendants' profits, damages suffered by USGA, and the costs of this action.

94.    Defendants' acts of service mark infringement have been committed knowingly, willfully, deliberately and maliciously with the intent to cause confusion and mistake and to deceive. Accordingly, USGA is entitled to a judgment of up to three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

95.    USGA has been, and continues to be, damaged by Defendants' activities and conduct, and unless Defendants' conduct is enjoined, USGA's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, USGA is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

96.    In addition to Defendants' infringement outlined above, Defendants, in bad faith, applied to register the trade name "Annapolis Ghost Adventures" in Maryland, using the predominate "Ghost Adventures" component of USGA's Service Mark in connection with Defendants' ghost tour operations

97.    Defendants registered the "Annapolis Ghost Adventures" trade name during the pendency of the WIPO proceeding and with the predominate components of USGA's Service Mark with the same bad faith intent to cause a likelihood of confusion or mistake with USGA's Service Mark.

98.    Shortly after the WIPO ruling, Defendants registered, via GoDaddy.com, "localghostadventures.com" on October 23, 2024, using the predominate components of USGA's Service Mark, and Defendants added a "Local Ghost Adventures" page to Defendants' website, using the predominate "Ghost Adventures" component of USGA's Service Mark, in bad faith, to target internet searches for "US Ghost Adventures" Service Mark and redirect customers to competing tours.

99.    Defendants continue to use the predominate "Ghost Adventures" component of USGA's Service Mark in commerce, and continue to maintain their active and bad faith registration of the trade name "Annapolis Ghost Adventures," and domain name registration for "localghostadventues.com" that wrongfully seeks to trade off of the predominate elements of the "US Ghost Adventures" Service Mark.

100.     Unless Defendants are enjoined from maintaining the bad faith "Annapolis Ghost Adventures" trade name, "Local Ghost Adventures" in their competitive marketing and commerce and the "localghostadventures.com" domain, USGA's Service Mark rights, reputation and goodwill will suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, USGA is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## COUNT II
## CYBERSQUATTING
(Against Defendants)
(15 U.S.C. § 1125(d))

101.     Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

102.     Carter, in his individual capacity, and on behalf of all Defendants, created and registered, via GoDaddy.com, the confusingly similar and infringing domain name usaghostadventures.com in March 2024.

103.     Defendants registered and used usaghostadventures.com with the bad faith intent to profit from confusion with USGA's Service Mark and USGA's domain name containing its Service Mark, usghostadventures.com, to divert business and services away from USGA and to Defendants' and their co-conspirators' competing tours.

104.     Although the disputed domain name has already been held to have been registered in bad faith and transferred to USGA, USGA is entitled to additional relief, including actual damages and profits or statutory damages up to $100,000 per domain name, under 15 U.S.C. § 1117(d), along with its costs and attorneys' fees.

**COUNT III**
**TRADEMARK AND SERVICE MARK INFRINGEMENT/UNFAIR COMPETITION**
(Against Defendants)
(Virginia Common Law)

105.    Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

106.    Since 2019, USGA has used its Mark, "US Ghost Adventures," in the ordinary course of trade and in connection with the sale, offering for sale and when providing both goods and services in the Commonwealth of Virginia to identify and distinguish its goods and services from others.

107.    Defendants' actions, as alleged herein, constitute common law trademark and service mark infringement and unfair competition under Virginia law.

108.    Defendants' conduct has caused damage to USGA's business, reputation and goodwill in an amount to be determined at trial.

109.    Defendant's actions were taken willfully, wantonly, maliciously, intentionally, and in bad faith. As a result, USGA is entitled to punitive damages for Defendants' wrongful conduct.

110.    USGA has been, and continues to be, damaged by Defendants' activities and conduct, and unless Defendants' conduct is enjoined, USGA's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.

**COUNT IV**
**TRADEMARK AND SERVICE MARK INFRINGEMENT/UNFAIR COMPETITION**
(Against Defendants)
(Maryland Common Law)

111.    Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

112.    USGA has used its Mark, "US Ghost Adventures," in the ordinary course of trade and in connection with the sale, offering for sale and when providing both goods and services in Maryland to identify and distinguish its goods and services from others.

113.    Defendants' actions, as alleged herein, constitute common law trademark and service mark infringement and unfair competition under Maryland law.

114.    Defendants' conduct has caused damage to USGA's business, reputation and goodwill in an amount to be determined at trial.

115.    Defendant's actions were taken willfully, wantonly, maliciously, intentionally, and in bad faith. As a result, USGA is entitled to punitive damages for Defendants' wrongful conduct.

116.    USGA has been, and continues to be, damaged by Defendants' activities and conduct, and unless Defendants' conduct is enjoined, USGA's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.

**COUNT V**
**FALSE ADVERTISING**
(Against Defendants)
(15 U.S.C. § 1125(a))

117.    Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

118.    As set forth above, Defendants have violated and continue to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

119.    The conduct of Defendants as described above constitutes false advertising. The statements and representations made by Defendants are likely to mislead, or have misled, consumers about the nature, characteristics, and quality of USGA's products and services, and are likely to cause, or have caused, consumers to falsely believe, among other things, that USGA and

its owner are unethical, deceive and scam USGA customers, steal content, "steal … hard work and research" and stories from Defendants and others, engage in illegal and deceptive business practices, "[h]ire people to constantly write fake 5-star reviews," and are inferior to Defendants' and their co-conspirators' tours, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

120. As outlined herein, Defendants and their co-conspirators have engaged in an organized false advertising campaign through online marketing materials, the infringing domain and website usaghostadventures.com, online forums, online marketing channels, social media platforms, and direct communications with customers, prospective customers, business partners, and prospective business partners, and through other means.

121. By reason of and as a direct and proximate result of Defendants' and their co-conspirators false advertising, Defendants have caused damage to USGA's business, reputation and goodwill and/or have diverted business and sales from USGA to Defendants and others, including their co-conspirators. USGA is entitled to recover Defendants' profits, damages suffered by USGA, and the costs of the action.

122. Defendants' acts of false advertising have been committed knowingly, willfully, deliberately and maliciously with the intent to cause confusion and mistake and to deceive. Accordingly, USGA is entitled to a judgment of up to three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

123. By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants and their co-conspirators have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause,

immediate and irreparable harm to USGA, for which there is no adequate remedy at law, and for which USGA is entitled to injunctive relief.

**COUNT VI**
**FALSE ADVERTISING**
(Against Defendants)
(Va. Code §§ 18.2-216 and 59.1-68.3)

124.    Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

125.    The conduct of Defendants as described above constitutes false advertising. The statements and representations made by Defendants are likely to mislead, or have misled, consumers about the nature, characteristics, and quality of USGA's products and services, and are likely to cause, or have caused, consumers to falsely believe, among other things, that USGA and its owner are unethical, deceive and scam USGA customers, steal content, "steal … hard work and research" and stories from Defendants and others, engage in illegal and deceptive business practices, "[h]ire people to constantly write fake 5-star reviews," and are inferior to Defendants' and their co-conspirators' tours, all in violation Virginia Code §§ 18.2-216 and 59.1-68.3.

126.    The actions of Defendants and their co-conspirators described herein including but not limited to the use of false and deceptive and misleading claims about USGA or its products or services to solicit customers through online marketing materials, the infringing domain and website usaghostadventures.com, online forums, online marketing channels, social media platforms, and direct communications with customers, prospective customers, business partners, and prospective business partners, and through other means constitutes false and misleading advertising in violation of Virginia Code §§ 18.2-216 and 59.1-68.3, and USGA has suffered and is continuing to suffer a loss to its business reputation and goodwill as a result thereof.

127.    Defendants' actions, as alleged herein, were intended to wrongfully divert sales and business from USGA to Defendants.

128.    Defendants' advertisements, as alleged herein, contained false assertions, representations, and statements of fact which are untrue, deceptive or misleading.

129.    Defendants have made and distributed these customer solicitations through the infringing website and social media in Virginia.

130.    Defendants' conduct has caused damage to USGA's business, reputation and goodwill, and USGA seeks recovery of the same in an amount to be determined at trial. USGA is entitled to recover attorneys' fees under Virginia Code § 59.1-68.3.

131.    By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants and their co-conspirators have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to USGA, for which there is no adequate remedy at law, and for which USGA is entitled to injunctive relief.

**COUNT VII**
**DEFAMATION**
(Against Defendants)

132.    Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

133.    Defendants have intentionally published to third parties untrue and defamatory statements concerning USGA, Zaal, and USGA's employees, products, and services in social media platforms, online forums, online marketing channels, and in direct communications with customers, prospective customers, business partners, and prospective business partners.

134.    Defendants' untrue and defamatory statements are set forth in detail above, but include Defendants' statements that: (1) Plaintiffs engage in fraudulent, deceptive, and unlawful business practices; (2) Plaintiffs engage in unethical and immoral conduct; and (3) Plaintiffs steal and/or otherwise misappropriate intellectual property, tour content, tour routes, and tour guides' stories from competitor ghost tour companies for use in connection with USGA's ghost tours. These statements are often published and republished by Defendants in various iterations, as set forth above, such as: (a) "US Ghost Adventures [does not] play fair, violate the law, and are actively involved in fraud and deceptive business practices"; (b) "[Plaintiffs] capitalize on the hard earned reputations of small local companies, steal their hard work and research, intellectual property, and violate their trademarks" (c) "the game is to pretend to be the local business because the local business is real, has real reviews and top SEO because of this. Lance Zaal gets paid through TripAdvisor with no accountability or refunds or questions asked when the customer is obviously disappointed"; (d) Plaintiffs "[h]ire people to constantly write fake 5-star reviews"; (e) "We have reams of evidence that this goes way beyond 'ethical' and is deep into the realm of illegal business practices"; (f) "Lance Zaal, owner of US Ghost Adventures, under legal and civil scrutiny for his questionable, deceptive, fraudulent, if not illegal business practices."

135.    These and the other untrue and defamatory statements set forth above have disparaged Zaal personally and Plaintiffs professionally in their trade and profession and constitute defamation and defamation *per se*.

136.    The respective publishers in each instance knew that the unprivileged statements that they published were materially false and/or acted in reckless disregard of said statements' falsity.

137.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have and/or will suffer damages to their trade, business, and reputation, and are entitled to recover the same in an amount to be proven at trial. Plaintiffs are entitled to presumed damages because Defendants' statements constitute defamation *per se*, and they are entitled to recover punitive damages because Defendants made the untrue and defamatory statements with knowledge of their falsity and/or reckless disregard of whether the statements were false.

138.    To the extent that any of Defendants' statements disparaging Zaal personally do not constitute defamation *per se*, Plaintiffs have suffered actual damages, and are thus entitled to recover the same in an amount to be proven at trial.

139.    By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants and their co-conspirators have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to USGA, for which there is no adequate remedy at law, and for which USGA is entitled to injunctive relief.          .

## COUNT VIII
## FALSE LIGHT
(Against Defendants)
(Maryland Common Law)

140.    Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

141.    Defendants have intentionally published to third parties untrue and defamatory statements concerning Zaal that place Zaal in a false light before the public.

142.    Defendants' untrue and defamatory and false light statements regarding Zaal are set forth in detail above, but include Defendants' statements that: (1) Zaal engages in fraudulent, deceptive, and unlawful business practices; (2) Zaal engage in unethical and immoral conduct; and

(3) Zaal steals and/or otherwise misappropriate intellectual property, tour content, tour routes, and tour guides' stories from competitor ghost tour companies for use in connection with USGA's ghost tours, and include statements such as: These statements are often published and republished by Defendants in various iterations, as set forth above, such as: (a) "US Ghost Adventures (USGA), and its apparently ethically-challenged owner Lance Zaal, have allegedly made it a standard business practice to violate and infringe small, locally-owned Ghost Tour companies' trademarks"; (b) "Apparently, if [Zaal] can't beat us fairly, he just tries to cheat"; (c) "the game is to pretend to be the local business because the local business is real, has real reviews and top SEO because of this. Lance Zaal gets paid through TripAdvisor with no accountability or refunds or questions asked when the customer is obviously disappointed"; (d) Zaal "[h]ire[s] people to constantly write fake 5-star reviews"; and (e) "Lance Zaal, owner of US Ghost Adventures, under legal and civil scrutiny for his questionable, deceptive, fraudulent, if not illegal business practices."

143.    These and the other untrue and false statements outline herein that place Zaal in a false light are statements that a reasonable person would find highly offensive.

144.    The respective publishers in each instance knew that the unprivileged statements that they published were materially false and/or acted in reckless disregard of said statements' falsity that placed Zaal in a false light.

145.    As a direct and proximate result of Defendants' wrongful conduct, Zaal has and will suffer damages to reputation, and is entitled to recover the same in an amount to be proven at trial.

146.    Defendant's actions were taken willfully, wantonly, maliciously, intentionally, and in bad faith. As a result, USGA is entitled to punitive damages for Defendants' wrongful conduct.

147.    By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants and their co-conspirators have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Zaal, for which there is no adequate remedy at law, and for which Zaal is entitled to injunctive relief.

**COUNT IX**
**TORTIOUS INTERFERENCE**
(Against Defendants)
(Common Law)

148.    Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

149.    USGA entered into a valid and enforceable twelve-month contract with DTN beginning March 1, 2025, an online advertising network that works with DMOs such as Visit Annapolis (the "Agreement") with a reasonable expectancy that such contract would continue for the duration of the twelve-month contract and month-to-month thereafter, until USGA directed otherwise.

150.    Pursuant to the terms of the Agreement, USGA would receive two "featured" listings on Visit Annapolis for an initial term of twelve months.

151.    Following the execution of the Agreement, as of April 14, 2025, USGA's featured listings—one for its ghost tour, and one for its haunted pub crawl—were available on Visit Annapolis.

152.    Upon information and belief, Carter, on behalf of himself and Defendants, willfully and intentionally made false, misleading and defamatory statements to Rasheeda Martin, Senior Director of External Relations, and/or others at Visit Annapolis, including, but not limited to, statements that USGA engages in illegal, unfair and unethical practices, steals intellectual

property, writes fake online reviews, engages in illegal attacks on local businesses, and/or other defamatory statements similar to those Defendants made elsewhere on their blog, infringing website and social media.

153.    Carter, on behalf of himself and Defendants, made such statements with knowledge of and for the purpose of interfering with the business relations between USGA and Visit Annapolis, and the contractual relations between USGA and DTN through improper means.

154.    As a result, of Defendants' intentional interference, on May 7, 2025, Visit Annapolis abruptly and unilaterally removed USGA's featured listings from its website.

155.    As a result of Carter's intentional and unlawful interference, USGA has suffered actual damages resulting from: (i) the breach and/or non-performance of the Agreement; and (ii) the improper removal of its listings from Visit Annapolis.

156.    USGA has suffered and seeks direct and consequential damages as a result of Defendants' tortious interference in an amount to be proven at trial.

157.    Defendants' actions were taken willfully, wantonly, maliciously, intentionally, and in bad faith. As a result, USGA is entitled to punitive damages for Defendants' wrongful conduct.

158.    By reason of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants and their co-conspirators have caused, are causing, and unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to USGA, for which there is no adequate remedy at law, and for which USGA is entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.  That this Court enter a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining Defendants, their officers, directors, employees, agents, successors, assigns, and any and all persons in active concert or participation with any of them, from continuing to engage in their false, deceptive, and misleading advertising campaign against USGA and Zaal or otherwise making false, deceptive, misleading, and/or defamatory claims or statements about Zaal, USGA, or its products or services.

B.  That this Court enter an order granting Plaintiffs all relief to which they are entitled under 15 U.S.C. §§ 1114, 1116, 1117, and 1125, including, but not limited to:

    i.    requiring Defendants to account for and pay to USGA up to three times all profits derived by Defendants from the sale of all products or services obtained in connection with their Service Mark infringement under Count I;

    ii.    requiring Defendants to pay actual damages and profits or statutory damages up to $100,000 per domain name under Count II;

    iii.    requiring Defendants to account for and pay to USGA all profits derived by Defendants from the sale of any and all products or services obtained by or through the use of false, deceptive, and misleading advertising or promotional materials, and/or other materials in violation of USGA's rights under Count V;

    iv.    requiring Defendants to pay actual damages to USGA under Counts I and V;

    v.    requiring Defendants to pay the cost and expenses of this action in connection with Counts I–II and V;

vi.     requiring Defendants to pay Plaintiffs' reasonable attorneys' fees under Counts I–II and V; and

vii.    enjoining Defendants from using "Annapolis Ghost Adventures," "Local Ghost Adventures," and the "localghostadventures.com" domain in commerce or in connection with the sale or offering of goods or services.

C.  That this Court enter an order requiring Defendants to issue a formal public retraction and engage in corrective advertising to rectify their false, deceptive, and misleading statements about Zaal and USGA and its products and services.

D.  That this Court award USGA attorneys' fees pursuant to Va. Code § 59.1-68.3 under Count VI.

E.  That this Court award USGA damages against Defendants in an amount to be determined at trial under Counts III, IV, VI, VII, and IX.

F.  That this Court award USGA punitive damages for Defendants' actions which were taken willfully, wantonly, maliciously, intentionally, and in bad faith under Counts III, IV, VII, and IX.

G.  That this Court award Zaal damages against Defendants in an amount to be determined at trial under Counts VII and VIII.

H.  That this Court award Zaal punitive damages for Defendants' actions which were taken willfully, wantonly, maliciously, intentionally, and in bad faith under Counts VII and VIII.

I.  That this Court award Plaintiffs pre-judgment and post-judgment interest on any damages award.

J.  That Plaintiffs be granted such further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all matters and issues triable by a jury.


Dated: June 18, 2025                              Respectfully submitted,

                                                  /s/ Christine S. Ward
                                                  Joshua F. P. Long (VSB No. 65684)
                                                  Joshua R. Treece (VSB No. 79149)
                                                  Christine S. Ward (VSB No. 97744)
                                                  WOODS ROGERS VANDEVENTER
                                                  BLACK PLC
                                                  10 S. Jefferson Street, Suite 1800
                                                  Roanoke, Virginia 24038-4125
                                                  Telephone: (540) 983-7600
                                                  Facsimile: (540) 983-7711
                                                  josh.long@woodsrogers.com
                                                  joshua.treece@woodsrogers.com
                                                  christine.ward@woodsrogers.com

                                                  Timothy Bechen (VSB No. 83639)
                                                  WOODS ROGERS VANDEVENTER
                                                  BLACK PLC
                                                  Riverfront Plaza, West Tower
                                                  901 E. Byrd Street, Suite 1550
                                                  Richmond, Virginia 23219
                                                  Telephone: (804) 343-5020
                                                  Facsimile: (804) 343-5021
                                                  timothy.bechen@woodsrogers.com

                                                  *Counsel for Plaintiffs US Ghost*
                                                  *Adventures, LLC and Lance Zaal*